UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

HOLMER AVELLAN,

       Plaintiff,
v.

SPIRIT AIRLINES, INC.,

       Defendant.
_____/

## COMPLAINT

Plaintiff, HOLMER AVELLAN ("Plaintiff" or "Mr. Avellan"), by and through undersigned counsel, hereby sues Defendant, SPIRIT AIRLINES, INC. ("Defendant" or "Spirit"), and alleges:

### JURISDICTION AND VENUE

1. This is an action for damages sounding in negligence. This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00.

2. Venue lies in this Court pursuant to 28 U.S.C. § 1391(a) and Rule 3.1 of the Local Rules of the United States District Court for the Southern District of Florida, in that the transactions or occurrences giving rise to this cause of action occurred in Broward County, Florida.

### THE PARTIES

3. At all times material hereto, Plaintiff was and is over the age of 18 years, *sui juris*, and a resident of Suffolk County, New York.

4. At all times material hereto, Plaintiff has been confined to a wheelchair after being paralyzed by a stroke. He cannot walk, stand, or use his arms. Mr. Avellan also has difficulty speaking and being understood.

5. Plaintiff is unable to use the toilet and wears a diaper, which must be changed frequently.

6. Defendant is a corporation duly organized under the laws of the State of Delaware.

7. Defendant operates commercial flights into and out of the Fort Lauderdale/Hollywood International Airport, located in Fort Lauderdale, Florida (the "Airport").

8. Defendant was operating commercial flights into and out of the Airport on June 11, 2016.

9. On the aforementioned date, Plaintiff was a ticketed passenger on Defendant's flight from Managua, Nicaragua, to New York, New York, with a change-of-plane layover in Fort Lauderdale, Florida.

10. During Plaintiff's layover at the Airport, he was caused to suffer physical injury as a result of the negligence of Defendant's employees and/or agents in Fort Lauderdale.

## FACTS

11. Plaintiff's wife, Jeannette Avellan, purchased a ticket for her husband for a return flight to New York from Managua, Nicaragua, with a layover in Fort Lauderdale.

12. Mrs. Avellan notified Defendant that her husband was completely disabled and would need assistance changing planes.

13. Defendant assured Mrs. Avellan that arrangements would be made at each airport through which Mr. Avellan would pass to assist him in his journey.

14. Defendant agreed that assistance was to be provided to Mr. Avellan with boarding in Managua and deplaning in Fort Lauderdale, transferring through the Airport to the plane to New York, and with boarding the airplane in Fort Lauderdale and deplaning in New York.

15. Mrs. Avellan specifically booked a ticket with a short layover so that her husband would not be forced to sit for too long.

16. Sitting for long periods of time can cause sores to develop.

17. In addition, it was necessary for Mr. Avellan to have the shortest duration journey possible because he needs to take medication on a timed basis.

18. After Mr. Avellan arrived in Fort Lauderdale, he was left in the airport and was not taken to the gate for his flight to New York.

19. Mr. Avellan had been scheduled to arrive in New York in the morning.

20. Mrs. Avellan went to the airport in New York to pick her husband up, and realized he was not on the plane for which he was ticketed.

21. Mrs. Avellan called Defendant's main customer service number and was told that her husband was still in Fort Lauderdale and had been rebooked on a flight that would arrive in New York at 11 p.m. instead.

22. Mrs. Avellan was told to call Defendant's Fort Lauderdale customer service desk for further information.

23. Mrs. Avellan called the number she was given, but there was no answer.

24. Mrs. Avellan then called a friend in Miami and asked her to drive to the Fort Lauderdale airport to see if Mr. Avellan could be located.

25. Mrs. Avellan's friend agreed, and when she arrived, she found Mr. Avellan alone in his wheelchair and crying.

26. One of Defendant's employees in the Airport advised that Mr. Avellan had been sitting alone and crying all day.

27. Eventually, Mr. Avellan was rebooked on a flight that left at 4:30 p.m., and which arrived in New York at approximately 8 p.m.

28. Mr. Avellan returned home several hours after he was originally scheduled.

29. Upon his arrival in New York, Mr. Avellan had soiled himself, and had been sitting in a dirty diaper for at least 10 hours.

30. As a result of sitting in a dirty diaper for nearly 10 hours, Mr. Avellan developed painful sores.

31. Mr. Avellan also suffered swelling of his ankles and bruising and swelling to the backs of his knees where they made contact for hours with his wheelchair.  These injuries lasted for weeks.

32. When Mrs. Avellan called and wrote letters to Defendant, Defendant's employees responded that next time her husband should not travel by himself.

33. Mrs. Avellan took her husband to medical professionals the day after he returned to New York for treatment of his injuries.

## COUNT I: NEGLIGENCE: CONDUCT

34. Plaintiff reavers and re-alleges the allegations set forth in Paragraphs 1 through 33 above, as though fully set forth herein.

35. Defendant had a statutory duty under Section § 382.91(a)–(b) of the ACAA to "provide or ensure the provision of assistance requested by or on behalf of a passenger with a disability ... in transportation between gates to make a connection to another flight" and "in moving from the terminal entrance (or a vehicle drop-off point adjacent to the entrance) through the airport to the gate for a departing flight[.]"

36. The federal Department of Transportation regulations also explain that air carriers must train "all personnel who deal with the traveling public, as appropriate to the duties of each

employee," in, among other topics, the requirements of the ACAA regulations; the airline's procedures regarding passengers with disabilities; "appropriate boarding and deplaning assistance procedures that safeguard the safety and dignity of passengers"; and "awareness and appropriate responses to passengers with a disability." *Id.* § 382.141(a).

37. In addition to its duties imposed by law, Defendant had specifically advised that it would transition Plaintiff from one plane to the next; having undertaken this responsibility, Defendant was required to carry it out in a reasonable and non-negligent fashion.

38. Based upon the foregoing, on June 11, 2016, Defendant breached its various duties to Plaintiff.

39. Defendant's breach was the proximate cause of Plaintiff's suffering and injuries, to wit Mr. Avellan:

    a. Was forced to sit for hours in a dirty diaper with no way to change it himself; and

    b. Spent hours without food, water, or his prescribed mediation; and

    c. Was alone and helpless for hours until his wife's friend arrived to advocate on his behalf; and

    d. Spent hours alone crying in the airport, ignored by Defendant's employees; and

    e. Developed swelling, bruising, and sores as a result of sitting unattended for hours in a wheelchair.

40. As a result of the foregoing, Plaintiff has suffered damages due to Defendant's breach of its statutory duties under the ACAA, as well its own failure to satisfy a duty that it specifically undertook. The list above is not exclusive, and will be supplemented with further injuries and issues as appropriate.

**WHEREFORE** for the foregoing reasons, Plaintiff, HOLMER AVELLAN, respectfully requests:

a. That this Court award him compensatory and punitive damages in an amount to be affixed by a jury;

b. Enter an order granting temporary and permanent injunctive relief, including an injunction requiring the Defendant cease all operations in this District until an appropriate plan is in place to comply with obligations under the ACAA, and to train its employees with respect to their duties to individuals with disabilities under the ACAA; and

c. Awarding Plaintiff all reasonable attorney's fees, litigation expenses, and costs.

## COUNT II: NEGLIGENT TRAINING

41. Plaintiff repeats and realleges each and every allegation made in paragraphs 1-40 as though set forth at length herein.

42. Defendant has a statutory duty to properly train their employees in order to ensure compliance with the ACAA.

43. Defendant has breached that duty by failing to properly train its employees to comply with the requirements of the ACAA.

44. Defendant's breach of this duty is the proximate cause of Plaintiff's physical and emotional injuries.

45. As a result of Defendant's breach of its statutory duty to properly train its employees, Plaintiff has been damaged.

**WHEREFORE** for the foregoing reasons, Plaintiff, HOLMER AVELLAN, respectfully requests:

a. That this Court award him compensatory and punitive damages in an amount to be affixed by a jury;

b. Enter an order granting temporary and permanent injunctive relief, including an injunction requiring the Defendant cease all operations in this District until an appropriate plan is in place to comply with obligations under the ACAA, and to train its employees with respect to their duties to individuals with disabilities under the ACAA; and

c. Awarding Plaintiff all reasonable attorney's fees, litigation expenses, and costs.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Respectfully Submitted,

**Law Offices of Nolan Klein, P.A.**
*Attorneys for Plaintiff*
Wells Fargo Tower - Suite 1500
One East Broward Blvd.
Ft. Lauderdale, Florida 33301
PH:   (954) 745-0588
FAX:  (877) 253-1691

By:  */s/ Nolan K. Klein*
     NOLAN K. KLEIN
     Florida Bar No. 647977
     klein@nklegal.com
     amy@nklegal.com
     robin@nklegal.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument was filed through CM/ECF this **9th** day of **May**, 2017.

> By: */s/ Nolan K. Klein*
> NOLAN K. KLEIN
> Florida Bar No. 647977